### No. 25542

**The People of the State of Colorado v. George M. Moya**
(504 P.2d 352)

Decided December 18, 1972.

Jarvis W. Seccombe, District Attorney, Coleman M. Connolly, Deputy, Frederic B. Rodgers, Deputy, Joseph T. Carroll, Deputy, for plaintiff-appellant.

Rollie R. Rogers, State Public Defender, J. D. MacFarlane, Chief Deputy, Lee Belstock, Deputy, for defendant-appellee.

*En Banc.*

MR. JUSTICE HODGES delivered the opinion of the Court.

Defendant Moya was charged with first-degree murder and found guilty by a jury of second-degree murder. He was represented at trial by two retained attorneys. On a previous appeal by writ of error, prosecuted on behalf of the defendant by the public defender, reversal was urged on the ground that the jury had been improperly instructed. In *Moya v. People,* 174 Colo. 435, 484 P.2d 788, this court held that the jury was properly instructed and we affirmed the judgment.

Thereafter, the defendant, by a motion under Crim. P. 35(b) for post-conviction relief, contended that he was denied due process of law because of ineffective representation at his trial by his two retained attorneys. The public defender was appointed to represent him at the 35(b) hearing, after which the trial judge granted the motion, vacated the judgment of conviction, and ordered a new trial. On behalf of the People, the district attorney on this appeal maintains that the trial judge erred in granting this motion and urges that we reverse the trial judge's disposition.

■ In granting the defendant's 35(b) motion, the trial judge, in effect, found that failure of the defendant's retained attorneys to call several available witnesses who could have presented testimony supporting the defendant's theories of self-defense or misadventure amounted to a demonstration of a denial of effective assistance of counsel and therefore was a deprivation of the defendant's constitutional right to due process. The record here amply supports this conclusion and therefore we affirm the trial court's judgment.

Of those present when the fatal stabbing occurred, only two persons, other than the defendant, claimed to be in positions to observe what happened. One was Alfred Vigil, who testified for the prosecution that the defendant lunged at the victim with the weapon and that he observed this from a point a few feet from the incident. The credibility of this testimony could have been placed in question by calling the investigating police officer as a witness for the defense. He could have testified that Alfred Vigil when questioned immediately after the incident was close to "falling down drunk."

The other person, the defendant's brother, who claimed to be standing next to the defendant when the stabbing occurred, gave a statement to investigating police officers that the victim "lunged into the knife"; that Alfred Vigil and the victim were drunk; and that the defendant acted in self-defense. At the 35(b) hearing, it was brought out that had this person been called as a defense witness, he could have testified to the effect that the victim had tried to grab the defendant's knife and in doing so, had tripped on the "pebble-like" surface and had fallen onto the knife. He could also have testified that at the time of the incident, the defendant was standing at the porch door of his home and was asking the victim to leave the house. The defendant stated to the victim "I don't want no trouble with you, Danny. Leave." Had he been called as a witness for the defense, he could have also testified that prosecution witness, Alfred Vigil, was "too drunk to move. He didn't move even after Danny fell. Nobody moved except for me, and my

brother George to help him." Also, defendant's brother could have testified for the defense, that prosecution witness Vigil was located approximately 30 feet from the incident rather than a few feet from the place of the incident as Vigil testified at trial.

After the prosecution had presented its evidence and rested, the defendant's trial attorneys also rested without presenting any testimony in support of the defendant's theory that the homicide occurred as a result of either misadventure or as a result of self-defense on the part of the defendant.

After a careful scrutiny of both the trial record and the 35(b) hearing record, we find it impossible to assign any good reason for the utter lack of effort to present available defense evidence which could well have shown to the jury that the homicide may not have resulted from an act of murder. The trial attorneys knew or should have known that this crucial testimony favorable to the defendant was readily available. One of the trial attorneys testified under subpoena at the 35(b) hearing. He recalled that he and his co-counsel received $1,500 from the defendant's mother to represent him. He gave no good reason for not presenting available evidence favorable to the defendant.

We have no hesitancy under the facts of this case to conclude that the defendant failed to receive a fair trial because of the failure of his trial attorneys to present any of the evidence favorable to the defendant which was clearly available and discoverable by even rudimentary investigation. As a result, the damaging prosecution's version of the incident was allowed to remain uncontradicted and unimpeached, even though there was evidence to challenge it. Whether the defendant's trial attorneys lacked the experience or competency to handle a trial of this kind, or whether they failed to fully prepare and adequately investigate prior to trial, or whether they simply did not possess the required dedication to their duties as defense counsel, is not readily apparent from this record. What is readily apparent is the fact that the defendant in this case was denied his constitutional

right to a fair trial. Here, there is clearly a deprivation of fundamental fairness. This is a failure of due process, which requires that the defendant's conviction be vacated and that he be afforded a new trial. *See People v. Armstead,* 179 Colo. 387, 501 P.2d 472 (1972) and *Kidder v. People,* 115 Colo. 72, 169 P.2d 181 (1946). *See also Moore v. United States,* 432 F.2d 730 (3rd Cir. 1970) and *Brubaker v. Dickson,* 310 F.2d 30 (9th Cir. 1962).

Judgment affirmed.