543 P.2d 72 (1975)
The PEOPLE of the State of Colorado, Plaintiff-Appellee,
v.
Phillip GONZALES, Defendant-Appellant.
No. 74-373.
Colorado Court of Appeals, Div. III.
September 23, 1975.
As Modified on Denial of Rehearing October 30, 1975.
Certiorari Denied December 22, 1975.
John D. MacFarlane, Atty. Gen., Edward G. Donovan, Sol. Gen., James W. Wilson, Asst. Atty. Gen., Denver, for plaintiff-appellant.
Richard S. Shaffer, Denver, for defendant-appellant.
Selected for Official Publication.
STERNBERG, Judge.
After trial by jury, defendant was convicted of possession of a narcotic drug in violation of § 12-22-302, C.R.S.1973, and of conspiracy to possess a narcotic drug in violation of § 18-2-201, C.R.S.1973. The jury was unable to agree on a verdict on two other possession and conspiracy to possess narcotics charges and these two charges, as well as two habitual criminal counts, were dismissed. Through new counsel, defendant contends that the incompetence of his retained trial counsel *73 was so palpable as to constitute both a denial of effective assistance of counsel and of due process of law.
In this appeal, we are required to address the standard to be employed in measuring the trial attorney's competency and then to determine whether the representation afforded the defendant in this case met that standard. We conclude that trial counsel's errors were so pervasive that the claim of incompetency is well founded, and thus reverse the judgment.
There are over 20 specific allegations which appellate counsel for defendant points to as constituting a failure to render effective assistance during trial. Some of the more noteworthy of these are: 1) Failure to object to the identification of heroin and marijuana by a detective based on hearsay without a proper foundation, 2) failure to object to the admission into evidence of a pistol totally without relevance in this drug prosecution, 3) failure to object to or attempt to limit the effect of testimony of needle marks in defendant's arms in spite of the fact that the charges were based on possession and conspiracy to possess narcotics and not on use thereof, 4) total unfamiliarity with the habitual criminal statute although one count facing defendant was based on that statute, 5) lack of knowledge of the requirements for eligibility to qualify for a deferred prosecution under § 12-22-322(7)(b) (I), C.R.S.1973, and 6) failure to employ one of several unused peremptory challenges to excuse a juror who had stated on voir dire examination that she had heard two of the prosecution witnesses testify at an unrelated previous trial and "believed them to be credible."
Additionally, our attention is called to numerous specific instances of ineptness in the record which, although of a less substantial nature than these above, indicate a general lack of skill and preparation on the part of defense counsel: Defense counsel had to be urged to make a motion to acquit at the end of the People's case by the district attorney who indicated that he feared an appeal based upon incompetency; defense witnesses were called whose testimony was contradictory; a witness whom defense counsel should have known to be illiterate was asked to identify a written document; and counsel tendered no proposed jury instructions.
In evaluating defense counsel's representation, it is not our function to second guess tactics and strategy. United States v. DeCoster, 487 F.2d 1197, (D.C.Cir.). Indeed, "[W]e . . . presume that trial counsel, appointed or retained, conscientiously seek, within the limits of preparation, ability, knowledge of the law, and skill at trial, to accomplish a successful result for his client." State v. Thomas, W. Va., 203 S.E.2d 445; see also In re Cronin, Vt., 336 A.2d 164. Nor does reasonably effective assistance mean that a defendant is constitutionally guaranteed such assistance of counsel as will necessarily result in his acquittal. See Steward v. People, 179 Colo. 31, 498 P.2d 933.
Historically, in Colorado and elsewhere the burden has been heavy on one who seeks to reverse a judgment on grounds of incompetency of counsel. In Steward v. People, supra, the standard to be applied in such cases was said to be that of "bad faith, sham, or farcical representation." Until recently, this test has been the one applied, with minor variations, throughout the country.
Generally, the rationale of these early ineffectiveness of counsel cases was based solely on due process notions. See Bazelon, The Defective Assistance of Counsel, 42 U.Cin.L.Rev. 1. With the landmark case of Gideon v. Wainright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799, however, the right to counsel was recognized as standing on its own as one of the fundamental human rights essential to a fair trial. In McMann v. Richardson, 397 U.S. 759, 90 S.Ct. 1441, 25 L.Ed.2d 763, the Supreme *74 Court elucidated on and gave renewed emphasis to this right when it stated that:
"[I]f the right to counsel guaranteed by the Constitution is to serve its purpose, defendants cannot be left to the mercies of incompetent counsel . . . ."
In a similar vein, Mr. Justice Schaefer of the Illinois Supreme Court has stated that:
"Of all the rights that an accused person has, the right to be represented by counsel is by far the most pervasive, for it affects his ability to assert any other rights he may have." Schaefer, Federalism and State Criminal Procedure, 70 Harv.L.Rev. 1.
Recognizing that the constitutional guarantee of assistance of counsel is a guarantee with a purposethe purpose being to assure that our adversary system of justice is really adversary and really does justiceJudge Bazelon has taken appellate courts to task for "papering over the cracks in the house that Gideon built" by hesitating to provide and apply meaningful standards in cases of alleged incompetency of criminal defense attorneys. See Bazelon, supra; and ABA, Standards Relating to the Defense Function § 1.1(a).
In line with the growing recognition of the need to go beyond the old shamfarce test and provide meaningful standards in ineffectiveness cases, recent state and federal decisions have approached the problem from a different aspect. These courts have applied standards which are similar to those applied in malpractice situations. Moore v. United States, 432 F.2d 730 (3rd Cir.); State v. Anderson, 117 N.J.Super. 507, 285 A.2d 234; Kott v. Green, 303 F.Supp. 821 (N.D.Ohio); United States v. DeCoster, supra; United States v. Garguilo, 324 F.2d 795 (2nd Cir.); State v. Thomas, supra; Hussick v. State, Or., 529 P.2d 938; and see Finer, Ineffective Assistance of Counsel, 58 Cornell L.Rev. 1077.
In Colorado, the evolution of the shamfarce rule is demonstrated in the case of People v. White, 182 Colo. 417, 514 P.2d 69. There, the Court expands the rule to encompass the issue of whether counsel's representation was "reasonably likely to render and rendering reasonably effective assistance." The opinion also speaks of representation falling "short of that required by lawyers who defend criminal cases" and that "Justice . . . does demand that counsel render reasonably effective assistance." Thus, the question really before us is whether counsel's representation in this case constituted reasonably effective assistance.
Here, defense counsel was not venal; his errors are attributable to inexperience. However, counsel's culpability is not at issue; rather, we focus on his client's constitutional rights. And, considering the more serious allegations of incompetence and considering also the cumulative effect of all of the alleged errors, we find that defense counsel's representation did not constitute reasonably effective assistance. Under these facts, defendant did not receive a fair trial, even though the seasoned trial judge, faced with this difficult situation, attempted to protect defendant within the limitations of judicial impartiality. Hence, while the trial was not a farce nor the defense a sham, defendant did not receive the reasonably effective assistance of counsel required by the Sixth Amendment.
Judgment reversed and cause remanded for a new trial on the charges of which defendant was convicted, and, if applicable, the habitual criminal count.
SILVERSTEIN, C. J., and PIERCE, J., concur.